**In re Paul F. McNAMARA, Debtor.**

**Paul F. McNamara, Appellant,**

v.

**Virginia McNamara Ficarra, Appellee.**

**Civ. No. 01–40197.**

United States District Court,
E.D. Michigan,
Southern Division.

March 27, 2002.

Thomas J. Budzynski, Clinton Township, MI, for Paul F. McNamara.

Austin M. Hirschhorn, Troy, MI, for Virginia Ficarra.

## OPINION AND ORDER

GADOLA, District Judge.

Before the Court is Appellant's appeal of the Bankruptcy Court for the Eastern District of Michigan's order refusing to except from discharge certain funds that he owed to his wife pursuant to divorce proceedings. Pursuant to Local Rule 7.1(e), the Court concludes that a hearing would not aid in the disposition of this matter. For the reasons stated below, this Court shall affirm the order of the Bankruptcy Court.

## I Background

This case has a tortured history. The parties married in 1962. Appellee brought an action for divorce in 1984. Although Appellee succeeded in obtaining a divorce, she was dissatisfied with certain provisions contained within the amended judgment of divorce that the Circuit Court for the County of Wayne entered on May 12, 1987. Appellee therefore appealed to the Michigan Court of Appeals.

On July 17, 1989, the Court of Appeals held that the trial court had abused its discretion by awarding Appellee insufficient alimony and that the trial court had abused its discretion by failing to make certain factual findings regarding the division of property. The Court of Appeals thus remanded the case to the Circuit Court for the County of Wayne. The parties then negotiated a second amended judgment, which the trial court entered on June 29, 1990. This judgment contained separate provisions for alimony and property settlement.

In 1993, Appellant filed a motion to decrease alimony and Appellee filed a motion to increase alimony. After several years of proceedings, the trial court changed the alimony provision from a fixed amount each month to a percentage-of-income approach and entered an order to that effect on March 12, 1999. Although Appellant appealed that order, the parties reached a settlement that ostensibly resolved all conflicts between the two of them before the Court of Appeals decided the matter. That settlement is entitled "Memorandum of Understanding" and is dated June 21, 1999.

On July 29, 1999, however, the Court of Appeals vacated the March 12, 1999 order and remanded the case to determine whether the level of alimony was decided properly. On remand, the Circuit Court for the County of Wayne ultimately entered an "Amended Order of Settlement" on January 28, 2000. This order essentially embodied the parties' "Memorandum of Understanding" of June 21, 1999, the main difference being a change in the property description contained in paragraph seven.

The "Amended Order of Settlement" required Appellant to pay Appellee a flat sum of $200,000.00 in order to effect a "full and final settlement of all issues outstanding between the parties." In relevant part, this order stated that Appellant "on or before October 31, 1999, shall pay to [Appellee] the sum of" $200,000.00 and that "this payment shall be a lump sum payment made payable to Katherine L. Barnhart P.C. and [Appellee]."

On May 2, 2000, Appellant filed a voluntary petition for bankruptcy pursuant to Chapter 7 of the Bankruptcy Code. In the requisite schedules, Appellant listed Appellee as a creditor holding an unsecured, non-priority claim in the amount of $185,322.00. Appellant included in his schedules the assertion that the claim was for a "divorce property settlement" incurred in 1990.

On July 28, 2000, Appellee filed an adversary proceeding in the Bankruptcy Court to determine whether the debt Appellant scheduled as an unsecured, non-priority claim in the amount of $185,322.00 ("the debt") for a "divorce property settlement" was actually a claim for alimony

and, pursuant to 11 U.S.C. § 523(a)(5), not amenable to discharge in bankruptcy. In the alternative, Appellee argued that the debt would be non-dischargeable under the hardship provisions of 11 U.S.C. § 523(a)(15).

On July 11, 2001, the Bankruptcy Court, the Honorable Burton Perlman presiding, adjudicated the matter based on the parties' "joint stipulation of facts" and issued an opinion and order holding that the debt was non-dischargeable alimony under § 523(a)(5). It is from that order that Appellant appeals.

## II Standard of Review

 District courts review a bankruptcy court's conclusions of law de novo. *See Investors Credit Corp. v. Batie (In re Batie)*, 995 F.2d 85, 88–89 (6th Cir.1993). A district court will not disturb a bankruptcy court's findings of fact, however, unless those findings were clearly erroneous. *See Manufacturers Nat'l Bank v. Auto Specialties Mfg. Co. (In re Auto Specialties Mfg. Co.)*, 18 F.3d 358, 361 (6th Cir.1994).

## III Analysis

 Under § 523(a)(5)(B) a debt to a former wife or husband is not dischargeable if it is "a liability designated as alimony, maintenance, or support, [or] is actually in the nature of alimony, maintenance, or support." 11 U.S.C.A. § 523(a)(5)(B) (West 2002). Appellant presents two arguments on appeal. First

is that, because a part of the debt was assigned to Appellee's lawyer, it is a dischargeable assignment under § 523(a)(5)(A).[1] Second, Appellant contends that a fixed award of alimony secured by assets constitutes a dischargeable property settlement.

The Court begins with Appellant's first contention. Although a minority of courts holds that the debtor's "payment of attorneys' fees directly to the attorney cannot be reconciled with the anti-assignment provision of Code § 523(a)(5)(A),"[2] 3 William L. Norton, Jr., *Norton Bankr.Law and Practice 2d* § 47:40 (1983) (2002 update), Appellant would not prevail even if he were to persuade the Court to adopt the minority approach. This is so because, in his brief, Appellant fails to point to a factual finding below,[3] or to evidence in the record showing, that there actually was an assignment through which he was to pay counsel fees directly to Appellee's attorney.

The closest that Appellant comes is on page fifteen of his brief, upon which he argues that "paragraph three [of the 'Amended Order of Settlement'] sets forth that the payment is to be made to [Appellee] and her attorney, thus making an assignment to a third party. [Appellee] has stated in her interrogatory answers that at least $117,436.31 was owed to her divorce attorney, an assignment to a third party, making this effectually not support." Appellant does not offer the relevant definition of "assignment"; he does not adduce

---

**1.** Section 523(a)(5)(A) allows discharge where the debt to an ex-spouse is "assigned to another entity, voluntarily, by operation of law, or otherwise," subject to exceptions not relevant to this case.

**2.** The majority view is that "a debtor's obligation to pay attorneys' fees is nondischargeable support regardless of whether the debt is payable directly by the debtor." 3 Norton at § 47:40.

**3.** Judge Perlman dealt with this issue in pages eight and nine of his opinion and seemed to assume, *arguendo,* that an assignment had been made before ruling that such an assignment would be nondischargeable as a matter of law. Judge Perlman was proceeding on the parties' stipulation of facts, and the stipulated facts do not mention an assignment.

any legal authority in support of his theory of an assignment on these facts; and he does not cite to the record to support his contention that "plaintiff has stated in her interrogatory answers that at least $117,436.31 was owed to her divorce attorney." The Court will nonetheless do its best to address Appellant's position.

■ That the Amended Order of Settlement "sets forth that the payment is to be made to plaintiff and her attorney" is of no moment. An assignment is "[t]he act of transferring to another all or part of one's property, interest, or rights. A transfer or making over to another of the whole of any property, real or personal, in possession or in action, or of any estate or right therein." *Black's Law Dictionary* 119 (6th ed.1990). Even were Appellant to have made a check payable to Appellee's counsel, this would prove nothing. For all that the Court knows, it may have been that counsel merely held the funds in a fiduciary capacity for Appellee, without Appellee having transferred any rights in those funds to her lawyer. *See, e.g., Michigan v. United States,* 40 F.3d 817, 823 (6th Cir.1994).

As to Appellant's averment that "plaintiff has stated in her interrogatory answers that at least $117,436.31 was owed to her divorce attorney," the Court notes that Appellant provides no citation to the record in support of this assertion, and that the stipulated facts upon which Judge Perlman adjudicated this case do not provide support for that statement.

■ It is Appellant's burden to develop adequately his claims of error and his factual allegations. *Pelletier v. Donald (In re Donald),* 240 B.R. 141, 145 (1st Cir. BAP 1999). This is so because judges are not, to paraphrase the Seventh Circuit, pigs hunting for truffles buried in case law or in the record. *United States v. Dunkel,* 927 F.2d 955, 956 (7th Cir.1991); *see also Brasten v. Zindell,* No. Civ. A. 94–6187, 1996 WL 73808, at 6–7 (E.D.Pa. Feb. 16,

1996). Appellant, in short, has not met his burden on appeal as it relates to his first argument.

■ Even if that were not so, moreover, this Court observes that courts typically do not view counsel fees incident to a divorce decree as a dischargeable assignment. *See, e.g., Pauley v. Spong (In re Spong),* 661 F.2d 6, 10 (2d Cir.1981); *Hyman and Rice v. Knuppenburg (In re Knuppenburg),* 422 F.Supp. 274, 274–75 (E.D.Mich.1976). Accordingly, this Court rejects Appellant's first argument and affirms the court below's holding that the debt was not a dischargeable assignment under § 523(a)(5)(A).

■ The Court now turns to Appellant's second and final argument: that a fixed award of alimony secured by assets constitutes a dischargeable property settlement and not dischargeable alimony under § 523(a)(5)(B). In determining whether § 523(a)(5) applies under these circumstances, this Court must begin with a three-prong analysis. First, the Court looks to "traditional state law indicia that are consistent with a support obligation. These include, but are not necessarily limited to, (1) a label such as alimony, support, or maintenance, (2) a direct payment to a former spouse, as opposed to the assumption of third-party debt, and (3) payments that are contingent upon such events as death, remarriage, or eligibility for Social Security benefits." *Sorah v. Sorah (In re Sorah),* 163 F.3d 397, 401 (6th Cir.1998).

Turning to prong one of the *Sorah* factors, the Court agrees with Appellant that the "Amended Order of Settlement" entered on January 28, 2000 does not label the $200,000.00 payment as alimony. Instead, the order merely states that the $200,000.00 payment would settle "all issues outstanding between the parties." The recitation of the factual and procedur-

al background delineated above, however, shows that since January 6, 1993, there was only one significant issue outstanding between the parties: the proper level of alimony. Therefore, this Court agrees with Judge Perlman that the "Amended Order of Settlement" was "essentially a settlement of the alimony conflict and it was the intent of the parties to create a support obligation." In other words, on these facts, saying that the $200,000.00 payment would settle "all outstanding issues between the parties" was tantamount to labeling the payment as alimony. Thus, the first prong of *Sorah* favors Appellee.

The second prong of *Sorah* asks whether there was "a direct payment to a former spouse, as opposed to the assumption of third-party debt." As explained above, Appellant has failed to carry his burden of developing this alleged point of error.

■ The third factor to consider under *Sorah* is whether the payment was "contingent upon such events as death, remarriage, or eligibility for Social Security benefits." In this case, the payment was a lump-sum payment subject to no such contingency. Under the law of Michigan, such lump-sum payments are typically considered property settlements, and not alimony. *See, e.g., Hunt v. Barker,* 139 Mich.App. 823, 362 N.W.2d 875, 876 (1985). This factor thus militates in favor of Appellant.

There we have it. Prong one of *Sorah* strongly favors Appellee, prong three strongly favors Appellant, and prong two carries little weight in this case. Although a mechanistic analysis of *Sorah* would seem to make this case a close call, in reality, the decision is not very difficult.

The *Sorah* court stated explicitly that lower courts need not limit their analyses to consideration of the three indicia dis-cussed above, but may also consider other factors. *Sorah,* 163 F.3d at 401; *see also Hammermeister v. Hammermeister (In re Hammermeister),* 270 B.R. 863, 874 (Bankr.S.D.Ohio 2001). When the Court steps back from the trees to observe the forest, there is an overriding factor that favors Appellee: For almost ten years, the locus of the parties' dispute centered on the appropriate level of alimony Appellant should pay Appellee.

Since 1987, time and time again, through a court order or an evanescent attempt at settlement, different formulae and amounts for Appellant's alimony payments were tried. From the Court of Appeals' decision on July 17, 1989 until the parties' 1999 Memorandum of Understanding, however, all of the attempts at structuring Appellant's alimony payments to Appellee since 1989 had several things in common. All: (1) extended over an indefinite period of time; (2) were for an indefinite sum; (3) were based on the husband's income and wife's needs; and (4) were modifiable should the balance of need and income change.[4] In other words, all of these payment schemes bore the earmarks of legitimate alimony and not a property settlement disguised as alimony. *See Hunt,* 362 N.W.2d at 876.

Until the Amended Order of Settlement, moreover, Appellee's chief contention was that Appellant owed her past and future alimony.[5] Thus, the $200,000.00 payment underlying the "Amended Order of Settlement" was, very clearly, an attempt to resolve legitimate disputes about the level of alimony to which Appellee was entitled and was not a property settlement camouflaged as an alimony payment. This conclusion is dispositive because the ultimate purpose of the foregoing analysis is to "sift the circumstances" to determine the "true

---

**4.** See the "Joint Stipulation of Facts" at pages two through four.

**5.** Exhibit 5 to "Appellee's Response to Order to Show Cause".

nature of the liability"; i.e., the Court's purpose is to divine whether the debt "is in fact a disguised property settlement." Claude R. Bowles & Jessica B. Allman, *What the Bankruptcy Code Giveth, Congress Taketh Away: The Dischargeability of Domestic Obligations After the Bankruptcy Reform Act of 1994*, 34 U. Louisville J. Fam. L. 521, 576, 587–88 (1996) (citing *Avery v. Avery (In re Avery)*, 114 F.2d 768 (6th Cir.1940)). In this case, quite clearly, the debt is not a disguised property settlement; it is the manifestation of the parties' decades-old struggle over alimony payments. As such, the debt is non-dischargeable alimony under § 523(a)(5).

## IV CONCLUSION

For the reasons set forth above, this Court holds that Judge Perlman correctly concluded that Appellant's debt to Appellee was not dischargeable.

**AFFIRMED.**