NOT FOR PUBLICATION
File Name: 06a0105n.06
Filed: February 9, 2006

No. 05-3007

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

In re: ANDREW JAMES JESTICE

       **Debtor**

_____

JULIE R. JESTICE,

       **Plaintiff-Appellant,**　　　　　　　**ON APPEAL FROM THE**
       　　　　　　　　　　　　　　　**UNITED STATES DISTRICT**
v.　　　　　　　　　　　　　　　　　　　　**COURT FOR THE SOUTHERN**
       　　　　　　　　　　　　　　　**DISTRICT OF OHIO**
ANDREW JAMES JESTICE;

       **Defendant-Appellee,**

PAUL H. SPAETH, Trustee

       **Trustee-Appellee.**
_____/

BEFORE:    SUHRHEINRICH and GRIFFIN, Circuit Judges, and HOOD,[*] District Judge.

    **PER CURIAM.** Appellant Julie Jestice ("Jestice" or "Wife") appeals from the order of the

bankruptcy appellate panel affirming the judgment of the bankruptcy court determining that certain

debts of Appellee Andrew Jestice ("Debtor" or "Husband") incurred during the course of his divorce

from Jestice were dischargeable. We **AFFIRM**.

### I. Background

---

    [*]The Honorable Joseph M. Hood, United States District Judge for the Eastern District of
Kentucky, sitting by designation.

Jestice and Debtor divorced in October 2001 after ten years of marriage. They had two children, ages five and nine, at the time of trial. Together they owned a home at 850 Dayspring Court, Trenton, Ohio, which had two mortgages. At the time of trial, the amount on the first mortgage owed to GMAC Mortgage Corporation was $107,000, and the amount owed on the second mortgage owed to National City Bank was $43,000, for a total of $150,000. Both parties acknowledged that the combined amount of the mortgages owed probably exceeded the value of the property. The house was up for sale at the time of the divorce.

On November 6, 2001, the Butler County, Ohio Common Pleas Court entered the Final Judgment Entry and Decree of Divorce. The divorce decree named Jestice as residential parent of the two minor children, and ordered Debtor to pay $804 a month in child support. The divorce decree also expressly provided that "neither party shall pay spousal support to the other." Regarding the house at 850 Dayspring, the decree provided that "Wife and Husband shall each pay half of any mortgages, insurance, taxes, utilities, and maintenance expenses and all other household expenses related thereto and shall hold each other harmless on their half of said expenses until the sale of the real estate." The decree also stated that once the property was sold, any equity would be divided equally before the second mortgage was paid. The decree further ordered that Debtor would be responsible for the entire second mortgage with National City Bank once the real estate had been sold.

By the terms of the decree, Jestice assumed responsibility on her student loan obligation. Debtor assumed responsibility for the MBNA and Visa Gold credit cards, and Midfirst Credit Union vehicle loan. Jestice received free and clear from any claims the 1997 Dodge Caravan secured with the Midfirst loan, and Debtor received the 1991 Chevrolet Cavalier.

2

The bankruptcy court found that Debtor assumed the following debts pursuant to the divorce decree: (1) MBNA (credit card), $9642; (2) Midfirst Credit Union (credit card), $3546; (3) Midfirst Credit Union (car loan), $6000; (4) GMAC (first mortgage–1/2 of full amount owed), $53,000; (4) National City Bank (second mortgage), $43,000; (5) marital household expenses (1/2 of full amount). These are the debts at issue in this case.

In August 2002, Jestice filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code. Her Chapter 13 Plan provides for payments on the two mortgages and the Dodge Caravan and an 11% dividend on unsecured claims including the two credits cards that Debtor was ordered to pay under the terms of the divorce decree.

On February 18, 2003, Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. On June 4, 2003, Jestice filed a complaint seeking a determination that Debtor's obligations under the divorce decree are nondischargeable under § 523(a)(5) or (15) of the Bankruptcy Code. The bankruptcy court held a trial of the adversary proceeding on February 4, 2004.

The bankruptcy court made the following findings of fact regarding the parties' financial conditions. The bankruptcy court found that in 2003 Debtor earned $49,000 per year in gross income, which translated to $2,667 per month in take-home pay, and that he had $2,388 in monthly living expenses. This latter sum included Debtor's child support obligation, but excluded the obligations at issue in this case. It also excluded payments on any debts that were discharged in the Chapter 7 proceedings.

The court found that Jestice earned $40,000 per year in gross income, and that her monthly net income, including child support payments and $615 per month from her live-in fiance, totaled

3

$3,218 per month. The court calculated Jestice's monthly expenses, including Debtor's obligations under the divorce decree, at $2,939 per month. This sum includes the $680 per month that Jestice pays to the trustee in her own Chapter 13 case.

On March 8, 2004, the court entered an opinion and order determining the debts at issue, namely the credit cards, vehicle loan, and mortgage obligations, are not in the nature of alimony, maintenance and support, but instead property division and therefore not excepted from discharge under 11 U.S.C. § 523(a)(5). The bankruptcy court further held that the marital debts were dischargeable under § 523(a)(15) because Debtor was both unable to pay and the benefits of a discharge to Debtor outweighed the detriment to Jestice.

Jestice appealed. On November 29, 2004, the Bankruptcy Appellate Panel ("BAP") affirmed the order on appeal. Jestice now appeals to this Court.

## II. Analysis

Although our review follows that of the BAP, we review the bankruptcy court's decision. *Koenig Sporting Goods, Inc. v. Morse Road Co. (In re Koenig Sporting Goods, Inc.)*, 203 F.3d 986, 988 (6th Cir. 2000). We review findings of fact for clear error and conclusions of law de novo. *Unsecured Creditors' Comm. of Highland Superstores, Inc. v. Strobeck Real Estate, Inc. (In re Highland Superstores, Inc.)*, 154 F.3d 573, 576 (6th Cir. 1998). Thus, the factual finding that an obligation constitutes a nondischargeable debt is reviewed for clear error. *Sorah v. Sorah (In re Sorah)*, 163 F.3d 397, 400 (6th Cir. 1998).

### A. 11 U.S.C. § 523(a)(5)

Jestice argues that the bankruptcy court erred in not holding that the obligations incurred by Debtor during the course of the divorce proceedings were not in the nature of support and therefore nondischargeable pursuant to 11 U.S.C. § 523(a)(5).

4

Section 523 provides in relevant part that debts to a former spouse are discharged, "but not to the extent that . . . such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support." 11 U.S.C. § 523(a)(5)(B). Thus, to be held nondischargeable, the award in the divorce decree must actually be in the nature of support. *Sorah*, 163 F.3d at 400. This determination depends upon the nature of the obligation and the language of the state court decree. *Id.*

The divorce decree expressly provides that neither party would pay spousal support to the other. The issue then is whether the debts at issue are actually in the nature of support. The Sixth Circuit has created a four-part test for determining whether an obligation not designated as alimony or maintenance is actually in the nature of support and thus nondischargeable for purposes of § 523(a)(5):

> First, the obligation constitutes support only if the state court or parties intended to create a support obligation. Second, the obligation must have the actual effect of providing necessary support. Third, if the first two conditions are satisfied, the court must determine if the obligation is so excessive as to be unreasonable under traditional concepts of support. Fourth, if the amount is unreasonable, the obligation is dischargeable to the extent necessary to serve the purposes of federal bankruptcy law.

*Fitzgerald v. Fitzgerald (In re Fitzgerald)*, 9 F.3d 517, 520 (6th Cir. 1993) (citing *Long v. Calhoun (In re Calhoun)*, 715 F.2d 1103, 1109-10 (6th Cir. 1983)). The non-debtor has the burden of establishing that an obligation is in the nature of support. *Id.*

Under the first step, the court must determine whether the debt assumption was intended as a support obligation. *Id.* at 1109. If the debt assumption was not intended as a support obligation by either the parties or the state court, the inquiry ends and the debt is dischargeable. *See id.* In

5

addition to the language and structure of the divorce decree, a bankruptcy court may also consider any of those factors utilized by a state court. *Id.* These factors include

> the nature of the obligations assumed (provision of daily necessities indicates support); the structure and language of the parties' agreement or the court's decree; whether other lump sum or periodic payments were also provided; length of the marriage; the existence of children from the marriage; relative earning powers of the parties; age, health and work skills of the parties; the adequacy of support absent the debt assumption; and evidence of negotiation or other understandings as to the intended purpose of the assumption.

> *Id.*; *see also id.* at 1108 n.7.

Although, as the BAP pointed out, the bankruptcy court used the wrong test,[1] it correctly determined that Debtor's assumption of the credit card, vehicle, and mortgage obligations lacked the traditional indicia of support and, therefore, were not excepted from discharge under 11 U.S.C. § 523(a)(5). As the BAP determined, the first factor favors Jestice only to the extent of the debt secured by the car awarded to her. Notably, the decree did not provide for her continuous residence in the real estate to which the first and second mortgages and the household expense obligation relate. Further, obligations to pay the mortgages, household expenses, and car loans are found in the decree section dividing marital property, and, as noted, the decree not only does not provide for other spousal support payments, it expressly stated that no support obligation was to be awarded to either party. Thus, as the bankruptcy court also found, Debtor's obligations are not structured as direct payments to Jestice, but rather as assumption of third-party debts. Nor are Debtor's obligations contingent upon death, remarriage, or Social Security eligibility of Jestice. The children

---

[1] The bankruptcy court applied the *Sorah* factors. *Sorah* applies to scenarios where the obligation is labeled as support, maintenance, or alimony in the divorce decree or agreement. It is therefore inapplicable in this case. However, as the Bankruptcy Appellate Panel also noted, the *Sorah* factors overlap with the *Calhoun* factors to great extent and any error is harmless in this instance.

6

are separately provided for by child support awards, and Debtor is further required to maintain medical insurance for the children, and to pay half of the uninsured medical expenses. As the bankruptcy court found, the parties' relative earning powers are comparable, although Jestice is better-educated; and both were in good health. Further, as the BAP also observed, Jestice's own income and the contributions from her fiance provide adequate support for her.

Although there is some evidence in the record that both parties intended the debt assumption to be in lieu of support, we agree with the BAP that, while some of these considerations weigh in favor of Jestice, we likewise cannot conclude that the bankruptcy court erred in determining that Jestice failed to satisfy her burden of proving that the obligations at issue were intended as support. As the BAP observed, the most notable factor is the comparable relative earning capacities of the parties (Jestice's was only about $2,000 less than Debtor's). We therefore cannot say that the bankruptcy court committed clear error in its findings of fact or conclusions of law.

Given its holding, the bankruptcy court did not need to evaluate the remaining factors of the *Calhoun* test.

## B. 11 U.S.C. §523(a)(15)

Jestice also challenges the bankruptcy court's conclusion that the third- party debt assumption in this case was also not excepted from discharge under 11 U.S.C. § 523(a)(15) because Debtor did not have the ability to pay the obligations, under 11 U.S.C. § 523(a)(15)(A), and that the benefit to Debtor to establish dischargeability outweighed the detriment to Jestice, *id.* § 523(a)(15)(B).

Section 523(a)(15) excepts from discharge those marital obligations that are not alimony, maintenance, or support obligations covered by § 523(a)(5). *Hammermeister v. Hammermeister* (*In*

7

*re Hammermeister*), 270 B.R. 863, 875-76 (Bankr. S.D. Ohio 2001). Subsection (a)(15) provides

that a debtor may not discharge a debt

> not of the kind described in [§ 523(a)(5)] that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit unless--
>
> (A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or
>
> (B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor.

11 U.S.C. § 523(a)(15). Thus, discharge of a marital obligation arising from a divorce decree or

separation agreement is permitted if the debtor is unable to pay the obligation or the harm to the

debtor resulting from its payment outweighs the benefit to the nondebtor spouse. *Hammermeister*,

270 B.R. at 876.

The obligations at issue are of the type described in the introductory language of §

523(a)(15), so the only question is whether Debtor proved that one of the exceptions applies. *See*

*Speizio v. Vitek (In re Vitek)*, 93 Fed. Appx. 28, 30 (6th Cir. 2004); *Hammermeister*, 270 B.R. at

876; *Hart v. Molino (In re Molino)*, 225 B.R. 904, 907 (B.A.P. 6th Cir. 1998).

### 1. 11 U.S.C. § 523(a)(15)(A)

Under subsection 523(a)(15)(A), the starting point for the determination of ability to pay is

at the time of trial. *In re Smither*, 194 B.R. 102, 108 (Bankr. W.D. Ky. 1996). A debtor's future

circumstances and earning potential may also be considered. *Id.* In determining a debtor-spouse's

ability to pay the marital debts, a majority of courts utilize the disposable income test.

8

*Hammermeister*, 270 B.R. at 877. Under this test, a marital obligation will be discharged under § 523(a)(15)(A) only if repaying it reduces the debtor's income below the level reasonably needed for the support of the debtor or his dependents. *Id.* In this determination, reasonably necessary expenses are those which are adequate, and not luxury items. *Id.* And a debtor is expected to minimize his daily expenses and do without amenities. *Biederman v. Stoodt (In re Stoodt)*, 302 B.R. 549, 557 (Bankr. N.D. Ohio 2003).

The bankruptcy court found that Debtor's take-home pay was $2,667 per month and that his living expenses (including his child support payments) total $2,388 per month, not including the debts in question, leaving a disposable income of $279 per month. Also, Debtor testified that he is paying only $375 per month in rent to stay in his father's basement, and that a modest two-bedroom apartment would cost Debtor $500-$600 per month. As the BAP held, the bankruptcy court's finding of fact that Debtor does not have the ability to pay the obligations in question is not clearly erroneous. Debtor's monthly expenses reflect a very modest existence. Furthermore, it is obvious that Debtor would not be able to support himself if required to pay the debts at issue. In short, we find no error.

**2. 11 U.S.C. § 523(a)(15)(B)**

Jestice also challenges the bankruptcy court's conclusion that the debt was dischargeable under subsection (B) of § 523(a)(15). In applying the balancing test prescribed by § 523(a)(15) bankruptcy courts review the respective financial status of the debtor and creditor and compare their relative standards of living. *Patterson v. Patterson (In re Patterson)*, No. 96-6374, 1997 WL 745501, at *3 (6th Cir. Nov. 24, 1997) (unpublished per curiam); *see also id.* at 3 n.1. (citation omitted) (listing various factors to be considered in applying the balancing test prescribed by §523(a)(15)(B)).

9

We agree with the BAP's assessment:

> The bankruptcy court considered [the *Patterson*] factors, including the parties' relatively equal incomes, health, age, and job skills, their living expenses, assets, and liabilities, and Ms. Jestice's superior education. The court also considered Ms. Jestice's eligibility for relief under the Bankruptcy Code and that she has taken advantage of that eligibility, enabling her to discharge 89% of the unsecured debts that the divorce decree obligated the Debtor to pay. As for changes in the parties' financial conditions since the divorce, the bankruptcy court relied on the fact that Ms. Jestice has elected to deviate from the design of the divorce decree and resume residence in the former marital home, the court concluding that Ms. Jestice "should be responsible for the debt burden associated with the decision." *Jestice v. Jestice (In re Jestice)*, Ch. 7 Case No. 03-31144, Adv. No. 3240, slip op. at 12 (Bankr. S.D. Ohio Mar. 8, 2004). The court further found that Ms. Jestice "has found a way to pay her monthly expenses, keep the parties' marital debts current and have disposable income of approximately $279 ($3,218-$2,939) leftover after meeting both her own expenses and the marital debts of the Debtor." *Id.* In addition, Ms. Jestice had the money to make a discretionary expenditure of $1,300 for the replacement of flooring. (Tr. at 49-50, App. at 95-96.) Although not necessary to the outcome of this proceeding, the bankruptcy court's finding of fact that discharging the obligations in question would result in a benefit to the Debtor that outweighs the detrimental consequences to Ms. Jestice is not clearly erroneous.

Opinion, at 12-13 (footnote omitted). Furthermore, as the BAP also observed:

> Ms. Jestice testified that she filed her bankruptcy petition under Chapter 13 so that she could retain the house that the divorce decree contemplated would be sold. Had she been willing to give up the house, she could have filed a Chapter 7 petition, discharging her personal liability on both home loans as well as the credit cards and perhaps reaffirming only a portion of the car loan. The Panel agrees with the bankruptcy court that Ms. Jestice should be responsible for the debt burden associated with her decision to keep the property contrary to the divorce decree.

*Id.* at 13 n.5. We agree, and adopt the BAP's analysis.

Finally, Debtor presents two new arguments not raised in the bankruptcy court, namely issues of partial discharge and fraudulent misrepresentation under § 523(a)(2). The BAP declined

10

to address these issues, and so do we. *See Pension Benefit Guar. Corp. v. White Motor Corp. (In re White Motor Corp.)*, 731 F.2d 372, 375 (6th Cir. 1984) ("Appellate courts will not give consideration to issues not raised below."). Adherence to this general rule of appellate procedure is especially compelling here, because both issues require determinations of fact not in the record.

### III. Conclusion

The bankruptcy court's order determining that Debtor's marital obligations to pay the aforementioned debts are dischargeable is **AFFIRMED**.