**In re Margaret A. NORBUT, Debtor.**

**Theodore J. Norbut, Plaintiff,**

v.

**Margaret A. Norbut, Defendant.**

**Bankruptcy No. 05–32990.
Adversary No. 07–3052.**

United States Bankruptcy Court,
S.D. Ohio,
Western Division,
at Dayton.

April 16, 2008.

Ira H. Thomsen, Springboro, OH, for the Plaintiff.

Lester R. Thompson, Dayton, OH, for the Debtor/Defendant.

John Paul Rieser, Dayton, OH, Chapter 7 Trustee.

MaryAnne Wilsbacher, Office of the United States Trustee, Columbus, OH.

**Decision Determining Obligation Arising Out of Overpayment of Spousal Support To Be Nondischargeable Pursuant to 11 U.S.C. § 523(a)(5)**

GUY R. HUMPHREY, Bankruptcy Judge.

## I. INTRODUCTION

This court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(a) and 1334, and the standing General Order of Reference in this District. This matter is before the court on the Motion for Summary Judgment filed by the Plaintiff Theodore J. Norbut (the "Plaintiff") on January 31, 2008 (Adv. Doc.16), the Response to Motion For Summary Judgment filed on February 11, 2008 (Adv.Doc.17) by the Debtor–Defendant Margaret A. Norbut (the "Debtor" or "Defendant"), and the Reply to the Defendant's Response to Motion For Summary Judgment filed on February 29, 2008 (Adv. Doc.18).

## I. FACTUAL AND PROCEDURAL BACKGROUND

The material facts in this adversary proceeding are not in dispute and are drawn from the Complaint (Adv.Doc.1), the Answer (Adv.Doc.6), the Plaintiff's Motion For Summary Judgment (Adv.Doc.16), the Submission of Stipulation of Authenticity of Documents filed on January 31, 2008 (Adv.Doc.15) (the "Stipulation"), and the exhibits to those filings as discussed in this Decision.

This adversary proceeding follows protracted litigation between the parties in the Ohio state courts and in the federal courts. In August 1997, the Plaintiff filed a motion to terminate his spousal support obligation to the Defendant in the Greene County, Ohio, Common Pleas Court, Domestic Relations Division (the "Domestic Relations Court"). During this litigation, the parties were not only before the Domestic Relations Court on the support issue, but also before the Ohio Second Appellate District Court of Appeals twice and also became entangled in related litigation in the federal courts concerning the distribution of the Plaintiff's pension benefits to the Defendant.[1]

The Debtor and the Plaintiff were married in 1962 and divorced in August 1989 through a Judgment Entry and Decree of Divorce (the "Decree") entered in the Domestic Relations Court. (Adv. Doc.1.Ex.D.). The Decree provided, among other things, for a division of marital property, the payment of the Debtor's attorney fees by the Plaintiff and the pay-

---

1. In addition to the litigation described in this Decision that took place in the Domestic Relations Court and the appeals from the Domestic Relations Court, apparently there also was litigation in the federal courts which de-layed the litigation in the Domestic Relations Court. See footnote 2 to June 15, 2007 Opinion of the Ohio Court of Appeals for the Second District, Greene County, Stipulation Ex. 3.

ment of alimony by the Plaintiff to the Debtor. In particular, the Decree states that the Plaintiff is

> further ordered to pay the sum of TWO HUNDRED FIFTEEN DOLLARS ($215) per week as and for alimony to the [Debtor]. The parties were married for twenty seven (27) years and the [Debtor] is entitled to fifteen (15) years of alimony. This shall remain in effect until the [Debtor's] death, remarriage or cohabitation with a non-relative male. This alimony award is subject to the continuing jurisdiction of this Court.

(Adv.Doc.1.Ex.D).

On August 8, 1997, the Plaintiff filed a Motion to Terminate Spousal Support in the Domestic Relations Court (the "Termination Motion") seeking an immediate termination of the payment of spousal support. The basis for the Plaintiff's request was that the Plaintiff became entitled to and took advantage of a "penalty-free early retirement" in January 1997. Stipulation, Ex. 3, p. 2. Essentially, the Plaintiff's position was that the alimony that he was paying was intended to provide for the Debtor's support until he retired, at which time she would be entitled to collect from his pension benefits and that, as a result of his early retirement, she was receiving both alimony and the pension payments and in effect "doubledipping" to his economic disadvantage. See Stipulation, Ex. 2 (Termination Motion) and Ex. 3, p. 2–3 (Court of Appeals June 15, 2007 Opinion). The Termination Motion alleged that:

> The Court did not consider the fact that should the Defendant [the Plaintiff in this adversary proceeding] retire prior to the 15 years which Plaintiff [the

Debtor in this case] was to receive spousal support, Defendant would be required to continue to pay spousal support from his one-half retirement pension.

However, the Court has ruled that this is a future happening and should not be dealth [sic] with until the event happens.

The Defendant is now retired and the order of spousal support and one-half of Defendant's pension has created an inequitable hardship upon the Defendant. Defendant is now forced to pay the spousal support from his one-half of his pension.

It has increased Plaintiff's income and greatly reduced Defendant's income placing Defendant under the poverty level during the remaining 15 year period.

Stipulation, Ex. 2, p. 2.

Based upon the Termination Motion, on June 18, 2003, the Magistrate for the Domestic Relations Court (the "Magistrate") issued the first Magistrate's Decision and Order reducing the amount of alimony to be paid to the Debtor. The Plaintiff appealed this ruling to the Ohio Second District Court of Appeals (the "Court of Appeals").

In its decision on the first appeal, the Court of Appeals considered whether the Domestic Relations Court erred in modifying rather than terminating the spousal support award. In remanding the matter back to the trial court, the Court of Appeals noted that the Domestic Relations Court failed to consider "all relevant factors, including those listed in R.C. 3105.18 [2], along with the change in circum-

---

**2.** Ohio Revised Code § 3105.18 (hereinafter "RC 3105.18") provides, in pertinent part, as follows:

§ 3105.18. Award of spousal support; modification

(A) As used in this section, "spousal support" means any payment or payments to be made to a spouse or former spouse, or to a third party for the benefit of a spouse or a former spouse, that is both for sustenance and

stances resulting from Margaret's increased income." Stipulation, Ex. 3, p. 4. The Court of Appeals held that the Domestic Relations Court erred in failing to make the reduction in support retroactive to the date of the filing of the Termination Motion.

On June 23, 2006, upon remand from the Court of Appeals, the Magistrate issued a second Magistrate's Decision. Through this second Magistrate's Decision, the court reduced, but did not terminate, the support retroactively. Upon the Plaintiff's request, the Magistrate issued Findings of Facts and Conclusions of Law. (Adv.Doc. 1.Ex. A). Among those Findings, the Magistrate determined that:

Theodore Norbut has had a change in income warranting a modification of spousal support. This Magistrate further finds that Margaret Norbut has experienced a change in circumstances which allows her to live an adequate standard of living. This Magistrate further finds that any modification needs to be retroactive to the date of 1997.

On August 24, 2006, the Domestic Relations Court Judge sustained the June 23, 2006 Magistrate's Decision and Findings of Facts and Conclusions of Law (the "Judgment"). (Adv.Doc.1.Ex. C).

The Plaintiff appealed the Judgment to the Court of Appeals. The issue before the Court of Appeals on the second appeal

for support of the spouse or former spouse. "Spousal support" does not include any payment made to a spouse or former spouse, or to a third party for the benefit of a spouse or former spouse, that is made as part of a division or distribution of property or a distributive award under section 3105.171 [3105.17.1] of the Revised Code.

(B) In divorce and legal separation proceedings, upon the request of either party and after the court determines the division or disbursement of property under section 3105.171 [3105.17.1] of the Revised Code, the court of common pleas may award reasonable spousal support to either party . . .

(C) (1) In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support, which is payable either in gross or in installments, the court shall consider all of the following factors:

(a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 [3105.17.1] of the Revised Code;

(b) The relative earning abilities of the parties;

(c) The ages and the physical, mental, and emotional conditions of the parties;

(d) The retirement benefits of the parties;

(e) The duration of the marriage;

(f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;

(g) The standard of living of the parties established during the marriage;

(h) The relative extent of education of the parties;

(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;

(j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;

(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;

(l) The tax consequences, for each party, of an award of spousal support

(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;

(n) Any other factor that the court expressly finds to be relevant and equitable.

(2) In determining whether spousal support is reasonable and in determining the amount and terms of payment of spousal support, each party shall be considered to have contributed equally to the production of marital income.

* * *

was "whether any spousal support award remained appropriate and reasonable after Margaret became entitled to her share of Theodore's pension in 1997." Stipulation, Ex. 3, p. 7. On June 15, 2007, the Court of Appeals issued its decision terminating the spousal support retroactively as of August 8, 1997. (Adv.Doc.15, Stipulation, Ex. 3). The Court of Appeals held that:

> Having considered the totality of the circumstances, including the factors set forth in R.C. § 3105.18(C), we believe the trial court abused its discretion in making only limited reductions in Theodore's support obligation retroactive to 1997. In our view, the trial court should have terminated spousal support effective with the filing of Theodore's motion for such relief in August 1997.

In concluding that the Domestic Relations Court erred in failing to terminate spousal support retroactively to 1997, the Court of Appeals stated that

> In reaching the foregoing conclusion, we have conducted our own review of the R.C. § 3105.18(C) factors, which include … [the court then enumerated the factors set forth in § 3105.18(C) ].
>
> Some of the foregoing factors have little applicability in the present case. . . .
>
> … Other factors are more relevant. The magistrate found that the parties' marriage lasted 27 years and they lived a "middle class modest life" during that time. . . . With regard to the parties' incomes from all sources and retirement benefits, the magistrate took into account Theodore's income from consulting work and his pension as well as Margaret' income from the pension, spousal support, and her Social Security. The magistrate made no mention, however, of the substantial income Margaret receives from her daughter, who began residing with her in 1994. . . . The magistrate also considered the parties' as-

sets and liabilities, noting that Margaret had substantial debts and expenses which militated in favor of her need for continued spousal support.

> In *Billingham v. Billingham* [citation omitted] we recognized that "each of the factors listed in R.C. § 3105.18(C)(1) relates, either directly or indirectly, to the obligee spouse's need or the obligor spouse's ability to pay" support. . . . We reasoned that the proper inquiry was whether the obligee spouse required continued spousal support to sustain the standard of living that existed during the marriage. If the obligor spouse had the ability to pay support commensurate with this standard of living, then continued support would be appropriate and reasonable under the statute.
>
> In the present case, the record supports the magistrate's conclusion that the parties lived a frugal, modest lifestyle during the marriage. . . .
>
> … The record reveals that following Theodore's 1997 motion, which remained pending for several years, Margaret increased her spending and incurred significant debts for, among other things, the renovation of her home, the purchase of an SUV and another vehicle, the purchase of two Florida timeshares, and ultimately the purchase and remodeling of a condominium into which she moved with her daughter. During the 2003 hearing on Theodore's motion, Margaret conceded that her discretionary expenses "shot up" when she began receiving the pension income in addition to spousal support after Theodore's 1997 retirement.
>
> The record persuades us that Margaret realized an income windfall beginning in 1997 due to her receipt of pension benefits and spousal support, and she increased her spending accordingly. The record also persuades us, however, that neither the trial court nor the parties intended for Margaret to receive both

sources of income simultaneously. As explained above, the original spousal support award was to provide for Margaret's sustenance for fifteen years until Theodore reached retirement age and began drawing his pension. At that point, spousal support would terminate and Margaret would receive pension income in its place.

Stipulation, Ex. 3, pp. 7–10. As a result of the Court of Appeals' retroactive termination of alimony, the Greene County Child Support Enforcement Agency determined that the Plaintiff's overpayments to the Debtor equaled $72,694.14 and that he was entitled to an additional $1,257.83 in poundage credit.

During the pendency of the litigation regarding the Termination Motion, on March 31, 2005, the Debtor filed a Chapter 7 petition listing the Plaintiff as a creditor on her Schedule F (creditors holding unsecured non-priority claims) for notice purposes only (Estate Doc. 1). On March 1, 2007, the Plaintiff commenced this adversary proceeding against the Debtor seeking a determination that the debt owed to him by the Debtor for overpayment of the spousal support is nondischargeable pursuant to 11 U.S.C. § 523(a)(5)[3] (Adv.Doc.1). On July 20, 2007, the Debtor filed her answer denying that the sums owed to the Plaintiff were nondischargeable, but admitting certain facts alleged in the Complaint and the authenticity of the exhibits to the Plaintiff's Complaint (Adv.Doc.6).

### III. *SUMMARY JUDGMENT STANDARD*

The appropriate standard to address the Plaintiff's motion for summary judgment filed in this adversary proceeding is set forth in Fed.R.Civ.P. 56(c), incorporated in bankruptcy adversary proceedings through Fed. R. Bankr.P. 7056. Rule 56(c) provides in part that a court must grant summary judgment to the moving party if:

the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). In order to prevail, the moving party, if bearing the burden of persuasion at trial, must establish all elements of its claim. *Celotex Corp. v. Catrett,* 477 U.S. 317, 331, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the burden is on the nonmoving party at trial, the movant must: 1) submit affirmative evidence that negates an essential element of the nonmoving party's claim; or 2) demonstrate to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim. *Id.* at 331–32, 106 S.Ct. 2548. Thereafter, the opposing party "must come forward with 'specific facts showing that there is a genuine issue for trial.' " *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citations omitted); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–51, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). All inferences drawn from the underlying facts must be viewed in a light most favorable to the party opposing the motion. *Matsushita,* 475 U.S. at 586–88, 106 S.Ct. 1348.

### IV. *LEGAL ANALYSIS*

While courts have considered the issue of whether the overpayment of child sup-

---

**3.** The Plaintiff did not pursue a claim regarding dischargeability under 11 U.S.C. § 523(a)(15). The Debtor's case was filed prior to the effective date of the Bankruptcy Abuse and Consumer Protection Act of 2005 (" BAPCPA"). Accordingly, the changes that Congress made to § 523(a)(15) through BAPCPA would not be applicable to this adversary proceeding.

port constitutes a nondischargeable debt under Bankruptcy Code § 523(a)(5)[4], this case appears to be one of first impression as to the issue of whether a judgment liquidating the overpayment of alimony or spousal support constitutes a nondischargeable debt under § 523(a)(5).[5] The parties have not raised any issue of material fact and, therefore, this matter is appropriate for determination by the court through summary judgment. The court finds that, under the particular circumstances of this adversary proceeding, the judgment rendered by the Ohio state courts liquidating the Debtor's obligation to the Plaintiff for the overpayment of spousal support is nondischargeable under § 523(a)(5).

Section 523(a)(5) of the Bankruptcy Code, as was in effect at the time that the Debtor's case was filed, excepts from discharge any debt:

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement . . .

11 U.S.C. § 523(a)(5).

■ Whether an obligation falls within the parameters of § 523(a)(5) is a matter of federal law, although state law should be consulted for guidance. *Long v. Calhoun (In re Calhoun)*, 715 F.2d 1103, 1106 (6th Cir.1983); *Allen Co. Child Support Agency v. Baker (In re Baker)*, 294 B.R. 281, 284 (Bankr.N.D.Ohio 2002). The burden is on the non-debtor spouse to prove that the debt is a nondischargeable support obligation. *Sorah v. Sorah (In re Sorah)*, 163 F.3d 397, 401 (6th Cir.1998).

Neither the final judgment of the Court of Appeals terminating the Plaintiff's spousal support obligation nor the Domestic Relations Court's judgments designate the amounts due to the Plaintiff on account of his overpayment of support as alimony or support. Accordingly, the standard set forth in *Sorah* for determining whether spousal obligations designated as "support" are actually in the nature of support is not applicable to this adversary proceeding, but rather, the "analytical framework" set out in *Calhoun* is applicable.[6]

■ In *Calhoun*, the Sixth Circuit set forth a four-part test for determining whether an obligation not designated as alimony or maintenance is actually in the nature of support and thus nondischargeable for purposes of § 523(a)(5): First, the obligation constitutes support only if the state court or parties intended to create a support obligation. Second, the obligation must have the actual effect of providing necessary support. Third, if the first two

---

**4.** *See Allen Co. Child Support Enforcement Agency v. Baker (In re Baker)*, 294 B.R. 281 (Bankr.N.D.Ohio 2002); *Kassicieh v. Mascotti*, 2007 WL 2800374 (Ohio Ct.App. Sept. 27, 2007); *In re Lutzke*, 223 B.R. 552 (Bankr. D.Or.1998); and *Lankford v. Drinkard (In re Drinkard)*, 245 B.R. 91 (Bankr.N.D.Tex.2000).

**5.** As previously noted, the Debtor's case was filed prior to October 17, 2005, the effective date of BAPCPA, and accordingly, the Bankruptcy Code as in effect prior to BAPCPA

applies. The import of this decision in Chapter 7 bankruptcy cases may be limited due to the amendments made to the Bankruptcy Code by BAPCPA, particularly the amendment of § 523(a)(15).

**6.** *See Fitzgerald v. Fitzgerald (In re Fitzgerald)*, 9 F.3d 517, 520 (6th Cir.1993); and *Jestice v. Jestice (In re Jestice)*, 168 Fed.Appx. 39, 43, n. 1 (6th Cir.2006).

conditions are satisfied, the court must determine if the obligation is so excessive as to be unreasonable under traditional concepts of support. Fourth, if the amount is unreasonable, the obligation is dischargeable to the extent necessary to serve the purposes of federal bankruptcy law. *Calhoun,* 715 F.2d at 1110 and *Fitzgerald v. Fitzgerald (In re Fitzgerald),* 9 F.3d 517, 520 (6th Cir.1993).

The court will discuss the first two factors set forth in *Calhoun* together. In determining whether a debt was intended by the court or parties to be a support obligation, courts consider the language and structure of the subject order and the factors that a state court would consider in making a support determination. *Calhoun,* 715 F.2d at 1109; *Larson v. Boroff,* 892 F.2d 1043, 1990 WL 480 (6th Cir.1990) (table decision); *Singer v. Singer (In re Singer),* 787 F.2d 1033, 1035, 1037–38 (6th Cir.1986) (concurring opinion); and *Luman v. Luman (In re Luman),* 238 B.R. 697, 705–06 (Bankr.N.D.Ohio 1999). *Calhoun* essentially repeats the factors set forth in Ohio Revised Code § 3105.18(C) (the "RC 3105.18(C) factors") as factors which may be considered in determining whether the debt was intended to be support. *Calhoun,* 715 F.2d at 1108, n. 7. *Larson* refers to similar factors. *Larson* at *4. In his concurring opinion in *Singer,* Judge Guy noted with approval the application of the RC 3105.18(C) factors in determining that the debt involved in that adversary proceeding was intended to be support.

In this case, both the Magistrate in the Domestic Relations Court and the Court of Appeals exhaustively applied the RC 3105.18(C) factors in determining that the Plaintiff's support obligation to the Debtor should be terminated retroactive to 1997. *See* Stipulation, Ex. 3, pp. 7–8. Among the factors considered by the Ohio state courts

were: (a) each of the parties' assets; (b) each of the parties' income; (c) the parties' earning capacities; (d) the length of the marriage; (e) the lifestyles that each of the parties lived during and after the marriage; and (f) the age and health of the parties. Stipulation, Ex. 3 (pp. 7–11). Thus, the Ohio state courts' determination regarding the overpayment by the Plaintiff was more than a mere finding that the Plaintiff overpaid spousal support as a result of an erroneous calculation or administrative error. The determination was made after the courts examined all of the economic and other circumstances concerning the parties-both for the Plaintiff and the Debtor.

The R.C. 3105.18(C) factors considered by the Magistrate and the Court of Appeals look beyond the obligee spouse's needs and consider both the obligee's spouse's circumstances and the obligor spouse's circumstances. The Court of Appeals noted that the R.C. 3105.18(C) factors relate, "either directly or indirectly, to the obligee spouse's need or the obligor spouse' ability to pay" support. Thus, the obligee spouse's "need" for support is balanced against and tempered by the obligor spouse's ability to pay such support. Stipulation, Ex. 3, p. 9.

In applying the RC 3105.18(C) factors, both the Magistrate and the Court of Appeals remarked that the Plaintiff and the Debtor lived a "frugal, middle class modest life" during their marriage. Stipulation, Ex. 3, p. 8, 9. Further, the record establishes that times did not get any better for the Plaintiff following his divorce from the Debtor. The Magistrate found that "[b]oth parties struggle to meet their expenses and have significant credit card debt.... At the time of the divorce, Mr. Norbut was earning a significantly larger amount of money then he is at this time." The Magistrate observed that the parties

were unable to enjoy "luxuries", such as multiple motor vehicles and swimming pool memberships, which they enjoyed during their marriage. Complaint, Ex. B, p. 4.

Furthermore, the Court of Appeals concluded that it was never in the contemplation of the Domestic Relations Court nor the parties that the Debtor would receive support payments once she started receiving the pension payments. The Court of Appeals found that:

> neither the trial court nor the parties intended for Margaret to receive both sources of income simultaneously. As explained above, the original spousal support award was to provide for Margaret's sustenance for fifteen years until Theodore reached retirement age and began drawing his pension. At that point, spousal support would terminate and Margaret would receive pension income in its place.

Stipulation, Ex. 3, p. 10.

The Court of Appeals further found that "[t]o the extent that Margaret has any need for spousal support after August 1997, the need is fairly attributable to her attainment of a standard of living above what the parties enjoyed during the marriage." *Id.* at p. 11.

It is not lost on this court that the payments being made to the Debtor by the Plaintiff since he filed the Termination Motion were from his share of his federal civil service pension or had the effect of depleting his share of the pension, while the Debtor was receiving her share of the pension. See Stipulation, Ex. 3. The purpose of the pension payments

was to provide for the Plaintiff's sustenance. Accordingly, an order requiring those payments to be returned to the Plaintiff would inevitably have the effect of providing support to the Plaintiff.

To be sure, it was more than just mere excess cash that the Plaintiff had to spend after he retired in order to pay his support obligations to the Debtor. In weighing all of the RC 3105.18(C) factors and finding that the parties, particularly the Plaintiff, at best lived a "frugal, modest" existence, that his employment terminated due to his being provided with an early retirement option, that he was in effect double-paying the Debtor by paying alimony out of his share of the pension while the Debtor was also receiving her share of the Plaintiff's pension, the Ohio state courts were in fact determining that the overpaid funds were intended for the Plaintiff's sustenance, were in fact necessary for the Plaintiff's support and that by paying the Debtor her share of the pension distributions as well as support on top of those pension distributions, the Plaintiff's ability to support himself was undoubtedly negatively impacted. The judgment for these sums attempts to restore the Plaintiff to the standard of living that was anticipated for him when the original Divorce Decree was entered by returning his share of the pension funds to him. The structure and text of the Court of Appeals' decision terminating the Plaintiff's support obligation and entitling him to the overpaid funds, in addition to the underlying Magistrate's Findings, indicate that the judgment was for support and has the effect of providing support to the Plaintiff.[7] Accordingly, the court finds

---

7. In arguing whether the Ohio state courts' award in this case constituted "support", both parties cite to the definition of "income withholding order" under Ohio Revised Code § 3115.01(F). The court notes that through Chapter 3115 of the Ohio Revised Code Ohio has adopted the Uniform Interstate Family Support Act which addresses the interstate aspect of support orders. There are no interstate issues involved in the present case. Therefore, the definition of "spousal support" found at O.R.C. § 3105.18 is applicable and Ohio Revised Code Chapter 3115 is not appli-

that the first two factors of the *Calhoun* test are present in this adversary proceeding.[8]

■ The third and fourth factors of the *Calhoun* test—whether the obligation is so excessive as to be unreasonable under traditional concepts of support and, if so, the obligation is dischargeable to the extent necessary to serve the purposes of federal bankruptcy law, are also related and will also be discussed together. In *Fitzgerald*, the Sixth Circuit noted that no courts had found judgments for support arrearages to be dischargeable. Finding support arrearages to be dischargeable "punishes the non-debtor spouse who has struggled to become self-supporting." *Fitzgerald*, 9 F.3d at 521. Having determined that the Plaintiff's overpayment of support to the Debtor constituted support, this court is not going to "second-guess" the Ohio state courts' determinations and attempt to parse through the award to determine what could be construed as currently "necessary" support for the Plaintiff or "unreasonable" in amount. The parties and Ohio state courts' wrangled over those numbers for ten years and this court is not now going to interject itself to reassess those determinations. Accordingly, the court finds that the third and fourth elements of the *Calhoun* analytical framework are met.

■ In making this determination this court seeks to give proper deference to the congressional policy favoring support obligations and to the Ohio state courts which were faced with these issues for ten years. As noted in *Calhoun* and *Fitzgerald*, " 'divorce, alimony, support, and maintenance' are issues within the exclusive domain of the state courts." *Fitzgerald*, 9 F.3d at 521. Bankruptcy courts should not "second-guess state court alimony determinations" and must "give proper deference to state divorce court decrees." *Sorah*, 163 F.3d at 401. "[T]he state court's consideration of the 'financial resources' of both parties ... would be for naught ..." if this court determined that the obligation owed to the Plaintiff was dischargeable simply because the Ohio state courts did not label the obligation owed to the Plaintiff as "support." *Holliday v. Kline (In re Kline)*, 65 F.3d 749, 751 (8th Cir.1995).[9]

cable to this case. Therefore the court finds that reliance on § 3115.01(F) is misplaced.

**8.** An unreported bankruptcy court decision addressed the closely related issue of whether an overpayment of child support obligations was entitled to priority under former § 507(a)(7), which section contained language identical to former § 523(a)(5). *In re Devine*, 1998 WL 386380 (Bankr.E.D.Pa. July 17, 1998). In ruling that the overpayment was not entitled to priority status, the court looked to the principle underlying support awards: "support oriented awards reflect a judgment based on the relative resources of the parties and are intended to supplement a recipient's income to enable the recipient to provide for his or her child's needs." *Id.* at *3. In that case, the court observed that the order directing the debtor-spouse to repay the overpayment reflected an amount equal to the overpayment without regard to the financial resources of either party, and as

such, precluded a finding that it was in any way intended to be a payment for support or maintenance of the creditor father. *Id.* at *4. Contrary to *Devine*, in this case both the Magistrate and the Court of Appeals carefully examined all of the RC 3105.18(C) factors in balancing the relative finances, assets, and other circumstances of the parties in arriving at the conclusion that Debtor owed this money back to Plaintiff. Thus, the balancing of the parties' financial resources by the State courts in this case, as noted in *Devine*, evidence the nature of the debt as one of support.

**9.** In *Kline*, the court found an obligation owed to an attorney for attorney fees incurred by the former spouse in a divorce case to be nondischargeable despite that fact that it was payable to the attorney and not to "a spouse, former spouse, or child of the debtor" as set forth in § 523(a)(5). *Holliday v. Kline (In re Kline)*, 65 F.3d 749, 751 (8th Cir.1995).

Furthermore, contrary to most of the exceptions to discharge that are to be narrowly construed "to afford the honest but unfortunate debtor a fresh start" *Brumbaugh v. United States (In re Brumbaugh)*, 267 B.R. 800, 806 (Bankr.S.D.Ohio 2001), the nondischargeability provision of § 523(a)(5) is construed broadly to promote the congressional policy that favors enforcement of obligations for spousal and child support. *Long v. Calhoun (In re Calhoun)*, 715 F.2d 1103, 1106 (6th Cir. 1983); *Luman v. Luman (In re Luman)*, 238 B.R. 697, 704 (Bankr.N.D.Ohio 1999). As is oft quoted, a debtor is entitled to a "fresh start, not a head start." *See Industrial Insurance Services, Inc. v. Zick (In re Zick)*, 931 F.2d 1124, 1129–30 (6th Cir. 1991); and *In re Stump*, 280 B.R. 208, 214 (Bankr.S.D.Ohio 2002). To allow the Debtor to discharge her obligation to repay these funds to the Plaintiff would be allowing her a "head start" and not a "fresh start."

The court's conclusion in this case is consistent with cases that have been decided by other courts regarding the dischargeability of the overpayment of child support. In *Allen Co. Child Support Enforcement Agency v. Baker (In re Baker)*, 294 B.R. 281 (Bankr.N.D.Ohio 2002), the court found that an obligation arising out of the overpayment of child support was not dischargeable. In that case, the father's child support obligations were retroactively terminated and the mother was ordered to pay child support to him. However, due to an administrative delay, the county child support enforcement agency continued to garnish the father's wages pursuant to the initial court order. As a result, the mother continued to receive child support payments to which she was no longer entitled. *Id.* at 283–84. In construing § 523(a)(5), the court found two equally possible and reasonable interpretations. *Id.* at 285–86. The first, proposed by the creditor father, was that a debt is "for . . . support of such . . . child" whenever there is a legal duty to pay such an obligation. *Id.* at 286. The second, more restrictive, and that urged by the debtor mother, requires the obligation to have been, in fact, paid for the direct support of the child. *Id.*

Looking to the intent of the statute and the policy considerations behind it, the court first noted that unlike most exceptions to discharge which are narrowly construed, § 525(a)(5) is to be broadly construed so as to further the bankruptcy policy of favoring support obligations over a debtor's need for a fresh start and that one of the consistent underlying themes of the Bankruptcy Code is to accord great deference to familial obligations. *Id.* at 287–88 (internal citations omitted). Second, the court explained that principles of federalism require that in matters that are traditionally reserved to state courts, any doubt as to a statute interpretation are to be resolved in favor of not interfering with state court matters. *Id.* For all these reasons, among others, the court concluded that the intent of § 523(a)(5) clearly aligned itself with the position advocated by the creditor father—that an obligation consists of support whenever there is a legal duty to pay such an obligation. *Id.* at 288.[10]

---

**10.** In reaching its decision, the court declined to follow two other cases presenting the issue of whether the overpayment of child support was "in the nature" of child support that had adopted a more restrictive construction of "support". The first case addressed the issue of whether the overpayment of child support was entitled to priority under former § 507(a)(7), which contains language identical to § 523(a)(5). *In re Lutzke*, 223 B.R. 552 (Bankr.D.Or.1998). In holding that it was not entitled to priority, the court primarily relied on the lack of need for the parent-creditor and on applicable state law that did

In a similar analysis, a 2007 decision of the Ohio Tenth District Court of Appeals followed *Baker* and determined that the overpayment of a child support obligation is included in the discharge exception of § 523(a)(5). *See Kassicieh v. Mascotti,* 2007 WL 2800374 (Ohio Ct.App. Sept. 27, 2007). The *Mascotti* court found most persuasive the language of § 523(a)(5) that explicitly provides for an obligation to be non-dischargeable when it arises "in connection" with a court order. This court does not conclude that a debt on account of an overpayment of a support obligation is *per se* support for purposes of § 523(a)(5), but otherwise finds *Baker* and *Mascotti* instructive.

## V. CONCLUSION

For the foregoing reasons, the court **GRANTS** the Plaintiff's motion for summary judgment. The court is simultaneously entering an order entering judgment in accordance with this Decision.

not consider a claim for overpayment of child support as actually child support. *Id.* at 554–55. The second case, citing Lutzke, found that an agreed judgment entry made for the overpayment of child support did not constitute a non-dischargeable debt under § 523(a)(5) based on the fact that applicable state law did not consider overpayment of child support as a debt; the creditor-parent did not have the need for the money; and the debt arose from a money judgment as opposed to a direct court order for support. *In re Drinkard,* 245 B.R. 91 (Bankr.N.D.Tex. 2000). These cases are distinguishable both on their particular facts and the particular state law being considered for guidance.